753 F.2d 360
 22 ERC 1260
 UNITED STATES of America, Appellee,
v.
Webster Monroe CHANDLER, III, Grover Cleveland Outland, III,
Grover Cleveland Outland, Jr., Frank Raymond
Kollmansperger, Jr., James M. Outland,
Francis Pasteur Thomas, III, Appellants.
 No. 84-5147.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 7, 1984.
Decided Jan. 29, 1985.
 
 Grover C. Outland, Jr., Chesapeake, Va. (Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., on brief), for appellant.
 Robert E. Bradenham II, Asst. U.S. Atty., Richmond, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.
 Before PHILLIPS, SPROUSE and SNEEDEN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Webster M. Chandler, III, Grover E. Outland, Jr., Grover E. Outland, III, James M. Outland, Frank R. Kollmansperger, Jr., and Francis Pasteur Thomas, III, appeal their convictions of taking or attempting to take waterfowl by aid of bait in violation of 50 C.F.R. Sec. 20.21(i), a regulation promulgated pursuant to the Migratory Bird Treaty Act, 16 U.S.C. Sec. 703 et seq. We find that the appellants were given adequate notice of the violation charged against them and that the evidence supports the convictions. Accordingly, the convictions are affirmed.
 
 
 2
 * The convictions result from appellants' hunting activities at Cedar Island, Virginia, on December 17, 1983. On December 5, 1983, federal wildlife officers observed a large population of ducks at four ponds on Cedar Island. Upon investigation, they discovered shelled corn in two of those ponds. Returning to the area on December 13, they observed a man scattering shelled corn into the same two ponds. The officers staked out the area on December 17, opening day of a segment of the Virginia duck hunting season, and apprehended the appellants who were hunting from blinds on three of the ponds. No corn was found in any of the latter three ponds on December 17, but corn was present in the fourth pond, some 300-500 yards away. The appellants were issued violation notices on January 17, 1984.
 
 
 3
 At trial before a magistrate, the government presented no evidence that the appellants were connected in any way with placing the corn in the ponds. The appellants argued that the violation notice charged them with taking by the aid of baiting rather than with shooting over a baited area, and that the government had failed to prove its case on the offense as charged. The magistrate found the appellants guilty on the evidence of shooting over a baited area, and the district court affirmed the convictions.
 
 II
 
 4
 50 C.F.R. Sec. 20.21(i) provides in pertinent part:
 
 
 5
 Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory game birds:
 
 
 6
 ....
 
 
 7
 (i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat, or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat, or other grain, salt, or other feed....
 
 
 8
 The violation notices issued from the U.S. Fish and Wildlife Service office in Richmond charged the appellants with "taking or attempting to take waterfowl by aid of bait" and listed 16 U.S.C. Secs. 703-712 and 50 C.F.R. Sec. 20.21(i) as the statutes violated. The first issue is whether the violation notice gave adequate notice of the charge to the defendants. We hold that it did.
 
 
 9
 The manifest intent of the regulation is to prohibit the taking of waterfowl that are lured to an area by bait. Cerritos Gun Club v. Hall, 96 F.2d 620 (9th Cir.1938) (construing predecessor statute). The regulation defines the offense in the disjunctive because it may be committed by two alternative factual means, a rather common feature of criminal statutes and regulations. See, e.g., United States v. Tresvant, 677 F.2d 1018, 1023 (4th Cir.1982) (Phillips, J., concurring); United States v. Haymes, 610 F.2d 309 (5th Cir.1980). The violation notice charged the appellants with the generic offense, "taking waterfowl by aid of bait," a phrase that covers both factual alternative means for committing the offense.[1] Charging the generic offense may have created some ambiguity as to what facts the government might seek to prove at trial but that ambiguity was patent. The defendants' remedy therefore was to seek a bill of particulars to clarify the specific factual theory (or theories) upon which the government was proceeding. See United States v. Branan, 457 F.2d 1062, 1065 (6th Cir.1972); United States v. Previti, 644 F.2d 318 (4th Cir.1981). They did not pursue their remedy and may not be heard now to challenge the adequacy of the notice. See United States v. Caldwell, 544 F.2d 691 (4th Cir.1976).
 
 
 10
 The appellants also contend that the evidence does not support the convictions because the government failed to prove a connection between the appellants and the bait. Specifically they point to a lack of evidence that they placed the bait and the lack of bait in any of the three ponds on which they were hunting. We find no merit to these arguments.
 
 
 11
 Violating the regulation by shooting over a baited area requires no proof of a connection of the offender with the bait; a hunter is strictly liable for shooting on or over a baited area. See United States v. Jarman, 491 F.2d 764, 767-68 (4th Cir.1974). Therefore, the only issue is whether the appellants were shooting on or over a baited area.
 
 
 12
 The government presented uncontradicted evidence that corn was in one of the ponds on which appellants were hunting within 10 days prior to December 17 and that corn remained in an adjacent pond on December 17. Appellants presented no evidence to dispute the testimony of Officer Riker that the duck population was heavily concentrated on these ponds, that the ducks were feeding on corn, and that the ducks were "trading from pond to pond" on December 17. The inescapable conclusion from this uncontradicted evidence is that ducks were being attracted to all four ponds by the lure of bait in two of the ponds. The area therefore met the definition of "baited area" set forth in the regulation.
 
 
 13
 The appellants press further that the "baited area" definition should be read to include a spatial limitation so that a hunter could avoid strict liability by inspecting a reasonably limited area for bait. They assert that the regulation places an onerous burden on the hunter if he must inspect all of an area of unknown extent against the possibility that bait somewhere within it may be attracting birds into his shooting range.
 
 
 14
 This court has not read such a spatial limitation into the regulation in previous cases. See, e.g., Jarman; United States v. Ireland, 493 F.2d 1208 (4th Cir.1973). Nor do we find now that the regulation is susceptible to such a reading. By its terms the extent of a "baited area" is defined only by the capacity of bait placed anywhere within it to act as an effective lure for the particular hunter charged. An arbitrary spatial limitation would fail to protect those birds that are attracted within shooting range by bait in areas just outside any arbitrary limitation that could be set. Furthermore, the appellants' asserted justification for reading in such a limitation is contradicted by the regulation's prohibition of hunting over an area for 10 days after bait has been removed. Obviously, a hunter could not escape liability solely by inspecting even a severely limited area from which bait had been removed less than 10 days before. Therefore Congress must have intended for the violation to turn on the factual determination that birds are being lured to a hunter's shooting location, no matter how far the bait is from that location and even though at the critical time the luring effect was traceable only to bait removed within the 10-day period.
 
 
 15
 Therefore, we hold that the evidence supports the finding that the appellants were shooting over a baited area and thus supports the convictions for taking waterfowl by aid of bait in violation of 50 C.F.R. Sec. 20.21(i).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The appellants argue that the notice language tracks only the clause setting forth the first factual means for committing the offense and therefore unambiguously charged them with that factual offense alone. Though the notice language is indeed similar to the first clause of the regulation, the generic phrase used was broader than appellants assert. The first clause of the regulation prohibits the act of placing the bait. Clearly one who has no part in placing the bait nevertheless takes waterfowl "by aid of bait" when he shoots waterfowl lured to a baited area