UNITED STATES, Appellee,

v.

Alexis JAVIER ANGUEIRA, et al., Defendants, Appellants.

No. 90–1925.

United States Court of Appeals, First Circuit.

Heard March 4, 1991.

Decided Dec. 10, 1991.

---

Luis F. Abreu Elias, Hato Rey, P.R., for defendants, appellants.

Silvia Carreno Coll, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., San Juan, P.R., was on brief, for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOYLE,* District Judge.

FRANCIS J. BOYLE, Chief Judge:

Fourteen defendants appeal their misdemeanor convictions for hunting or attempting to hunt white-winged doves by the aid of bait or on or over a baited area in contravention of the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq. (1988), and regulations promulgated thereunder. *See* 50 C.F.R. § 20.21(i) (1988). Defendants contend that they should have been acquitted because they relied on a temporary restraining order of the Superior Court of Puerto Rico forbidding local game wardens from interfering with their hunt. They assert further that the district court erred by implicitly finding that all the defendants knew that the field had been baited. Finally, defendants challenge the sufficiency of the evidence, and maintain that the United States Fish and Wildlife Service wrongfully induced them to believe that Puerto Rico's white-winged doves are not migratory birds. *Finding nothing to ruffle our feathers, we affirm.*

## I. FACTS

In late August of 1989, the Puerto Rico Department of Natural Resources (D.N.R.) received a tip that defendant Francisco A. Abreu Aldarondo's (Abreu) farm had been baited. The fall bird hunting season was to begin on September 2. On August 28, 1989, a D.N.R. Ranger drove past Abreu's property and saw a young man throwing yellow seeds onto the soil. The Ranger

---

* Of the District of Rhode Island, sitting by designation.

also saw defendant Abreu providing the young man seeds, and instructing him where to apply them. Abreu then drove away. He then returned and asked the Ranger what was going on. The Ranger said he was observing the doves' path.

The next day, D.N.R. Rangers went to an area west of Abreu's estate and noticed thousands of white-winged doves descending upon Abreu's land. Two hunters told the Rangers that Abreu's farm was baited. On August 30, 1989, D.N.R. Rangers informed Abreu that his farm had been declared baited, and that he was forbidden from hunting on it until ten days after he removed the bait. Abreu proclaimed he knew the law, and promised not to hunt.

Within two days, ten of the defendants-to-be sought a temporary restraining order, requesting the Superior Court of Puerto Rico to prohibit D.N.R. Rangers from hindering hunting at Abreu's property on opening day. They alleged that the Rangers had unlawfully declared the land baited because the D.N.R. had no jurisdiction over private property, and because any evidence of baiting was illegally seized. The hunters also maintained that even if the land was baited, "there is no evidence that tends to show that the area has been baited within ten days provided by the regulations." Several of the defendants in this action submitted sworn statements with the petition, stating that to the best of their knowledge, the facts in the petition were true. None of the sworn statements stated that Abreu's farm had not been baited. *Id.* The court issued the restraining order on September 1, 1989.[1]

The next day bird season opened. At the crack of dawn, D.N.R. Rangers arrived at the Abreu property accompanied by Randy Armstrong, an Agent of the United States Fish and Wildlife Service. They were greeted by fresh barbed wire and a uniformed security guard who furnished them with the temporary restraining order issued by the superior court. Armstrong and the Rangers saw a posse in and around

Abreu's farm hunting an abnormally large flock of white-winged doves flying overhead from the west. Armstrong and the Rangers then entered upon Abreu's land to check the hunters' licenses. The agents discovered corn bait. Photographs and samples of the bait were taken, and several defendants were notified that Abreu's estate was baited. Armstrong and the Rangers also entered nearby farms to the west to check the licenses of other hunters, two of whom were approximately 2500 feet from the baited area in Abreu's farm. Each defendant was seen shooting at white-winged doves. Tempers flared, and several hunters became violent. Armstrong and the Rangers decided to leave.

On September 11, 1989, Armstrong issued federal violation notices to fourteen people who had been hunting on or near Abreu's farm on opening day. The notices charged them with hunting by aid of bait, or on or over a baited area in violation of 50 C.F.R. § 20.21(i) and 16 U.S.C. § 703.

On September 13, 1989, ten of the defendants returned to the Superior Court of Puerto Rico for a hearing on their motion for a preliminary injunction. The court issued a final consent judgment stating that Abreu "agrees to clean immediately the baited area, so that after ten days, said party be returned to the right to hunt within said referred area." The judgment also authorized Abreu and the petitioners to immediately hunt on the portion of the property which had "not been baited." *Id.* On October 27, 1989, the Superior Court of Puerto Rico amended its judgment *nunc pro tunc* to read "allegedly baited area" instead of "the baited area."

Back in federal court, defendants protested Armstrong's violation notices, and on March 1, 1990, the United States filed criminal informations against each defendant. The cases were consolidated and tried before the Chief Judge of the United States District Court for the District of Puerto Rico sitting without a jury. In judgments entered September 7, 1990, the

---

1. Defendants have included a copy of the restraining order in their appendix. The order is in Spanish, however, and no translation has been provided. We therefore do not speculate as to the basis for the court's ruling. *See* 1st Cir.Loc.R. 30.7.

court convicted each defendant of taking or attempting to take a migratory bird by aid of bait or on or over a baited area. A fine of $250 was imposed upon each defendant. *See United States v. Angueira,* 744 F.Supp. 36, 36–37 (D.P.R.1990). All fourteen appeal.

## II. SCIENTER

■ Defendants claim that the district court erred by implicitly finding that each and every defendant knew that Abreu's farm had been baited. This argument is without merit. We assume for present purposes that scienter is required while leaving to another day a determination of that issue. *See United States v. Sylvester,* 848 F.2d 520, 522–23 (5th Cir.1988) (government must prove defendant could have reasonably ascertained existence of bait); *Allen v. Merovka,* 382 F.2d 589, 591 (10th Cir.1967) (conviction for hunting by aid of bait requires proof that defendant either participated in the baiting or that baiting was for defendant's benefit). *But see, e.g., United States v. Chandler,* 753 F.2d 360, 363 (4th Cir.1985); *United States v. Catlett,* 747 F.2d 1102, 1104–05 (6th Cir.1984) (per curiam), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985); *United States v. Manning,* 787 F.2d 431, 435 & n. 4 (8th Cir.1986).

Contrary to the defendants' contention, there is ample evidence from which it may be concluded that all fourteen defendants knew that the area had been baited.

First, with respect to the ten defendants who participated in the superior court litigation[2], the district judge found that "defendants themselves, albeit inadvertently, conceded the point [that the field had been baited] when they requested the temporary restraining order from the Superior Court of Puerto Rico" a few days before open season. *United States v. Angueira,* 744 F.Supp. 36, 39 (D.P.R.1990). Here, the district court's finding of knowledge is obvi-

ously correct. These ten defendants alleged that the D.N.R. had declared Abreu's land baited, and that was the reason they sought the injunction. The district court could have justifiably concluded, beyond a reasonable doubt, that the same ten defendants did not in reality contest the fact that the field had been baited, but only challenged D.N.R.'s right to intervene on Abreu's farm. Defendants never flatly denied that the field was baited. Accordingly, if actual knowledge of the bait is required, that element is satisfied as to ten defendants who, by implicitly admitting the field had been baited, cooked their own geese.

There is also ample evidence from which the district court could conclude beyond a reasonable doubt that the defendants who did not participate in the local litigation knew that the field had been baited.

Each of these defendants[3], dressed in camouflage greens and equipped with a shotgun, shot at least one bird. Significantly, unusually high concentrations of white-winged doves flew over the farms from west to east. Defendants, armed and dressed as experienced hunters, certainly observed this phenomenon. More significant is the fact that these hunters positioned themselves in a manner which permitted them to take advantage of the baited area. Specifically, the district court found that:

> In the case at bar, it is most significant that the hunters had all strategically positioned themselves to the west of the baited area so that, no matter how far away they stood, the eastbound doves necessarily had to fly over them to reach the bait.

*United States v. Angueira,* 744 F.Supp. at 39.

This conclusion is fully supported by the record and is sufficient for a finding that these defendants knew the area had been

---

2. Alexis Javier Angueira–Abreu, Radai Mendoza–Martinez, Jose M. Guevara–Rafols, Francisco A. Abreu–Aldarondo, Ramon L. Angueira–Hernandez, Eduardo Gonzalez–Perez, Nabor Mendoza–Borges, Carlos Torres–Uvanderbys, Hector Mendez–Rodriguez and Victor Canabal–Otero.

3. German Varela–Perez, Jose Francisco Orama–Colon, Ramon A. Ponce–Fantauzzi and Jose M. Guevara–Munoz.

baited. Consequently, the district court did not err in implicitly finding that all fourteen defendants knew that the Abreu farm had been baited.

### III. ZONE OF INFLUENCE

■ Two defendants[4] contend the evidence was insufficient to convict them because they were hunting approximately 2500 feet from the baited area. These defendants were hunting on a farm west of the baited area. The doves were flying to the baited area from the west, placing these defendants within the zone of influence. Anyone hunting migratory birds in the zone of influence is subject to criminal liability for hunting by the aid of bait.[5] We do not disturb their convictions.

### IV. EQUITABLE ESTOPPEL

■ Defendants argue next that although the white-winged dove is considered migratory for the purposes of the Act, *see* 50 C.F.R. § 10.13 (1988), their convictions cannot stand because the United States Fish and Wildlife Service wrongfully induced them to believe that Puerto Rico's white-winged doves are not migratory birds.

In 1981, the Puerto Rico Department of Natural Resources published a hunter's manual supported by funds from the United States Fish and Wildlife Service. In this manual, the white-winged dove was classified as a resident bird of Puerto Rico. Defendants contend that the government was prohibited from prosecuting them because they relied to their detriment on this hunting manual. This raises a question of equitable estoppel.

The Supreme Court has left open the question of whether the doctrine of equitable estoppel can ever be applied against the government. *Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

Even if equitable estoppel can be invoked against the government, "the party raising the defense must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir.1985) (quoting *Akbarin v. I.N.S.*, 669 F.2d 839, 842 (1st Cir.1982)). There is no evidence that any of the defendants relied on the hunters' manual. Further, the government's role in funding publication of the manual does not begin to approach affirmative misconduct. Defendants have thus failed to establish the basic elements of equitable estoppel should that doctrine apply.

Defendants' convictions are hereby *Affirmed.*

---

**4.** Jose M. Guevara–Rafols and Jose M. Guevara–Munoz.

**5.** We reserve the task of interpreting the frontiers of "on or over a baited area" to another safari. *Compare United States v. Manning*, 787 F.2d 431, 437–38 (8th Cir.1986) (on or over baited area includes entire zone of influence) *with United States v. Bryson*, 414 F.Supp. 1068, 1074 (D.Del.1976) (on or over baited area means "on or over an area where bait has been placed.").