851 F.Supp. 708 (1994)
UNITED STATES of America
v.
Edgar J. ORME, III.
Crim. No. S 93-0496.
United States District Court, D. Maryland.
May 19, 1994.
*709 Lynne A. Battaglia, U.S. Atty., Robert M. Thomas, Jr., Asst. U.S. Atty., Baltimore, MD, for plaintiff.
Stephen S. Boynton, Vienna, VA, for defendant.

MEMORANDUM OPINION
SMALKIN, District Judge.
This is an appeal by one of several defendants convicted after a non-jury trial before the Honorable Daniel E. Klein, Jr., United States Magistrate Judge, on criminal charges under the Migratory Bird Treaty Act (MBTA), 16 U.S.C. § 703, et seq., arising from a waterfowl hunting episode that took place on the Jamaica Point Farm at Trappe, Maryland, on January 20, 1993. The Magistrate Judge's findings of fact and conclusions of law were set forth in a reported opinion, United States v. Dize, 839 F.Supp. 1170 (D.Md.1993). Only the defendant Orme has appealed, pursuant to 18 U.S.C. § 3402. The Government has filed an answering brief. The Local Rules of this Court do not provide either for a reply brief or oral argument as a matter of right in such appeals, and the Court sees no need for either in this case.
The standard of review on appeal from a conviction entered by a Magistrate Judge is well-settled. That is, his conclusions of law are subject to de novo review, while his findings of fact are reviewed only for clear error, just as would be the case were the matter on appeal from a District Court bench trial to a Court of Appeals. See, e.g., United States v. Ramirez, 555 F.Supp. 736, 739 (E.D.Cal.1983). Of course, "clear error," as defined by the Supreme Court in Anderson v. Bessemer City, 470 U.S. 564, 573-76, 105 S.Ct. 1504, 1511-13, 84 L.Ed.2d 518 (1985), is more than a difference of opinion between the original fact-finder and the appellate reviewer; to be clearly erroneous, a finding must leave the reviewer with a "definite and firm conviction that a mistake has been committed." Id. at 573, 105 S.Ct. at 1511.
The appellant points specifically to three errors in the judgment below and raises a challenge to the sentence in passing. These matters will be discussed seriatim. In resolving the issues, this Court has read, viewed, or otherwise considered the entire transcript of the multi-day trial, as well as the other exhibits forwarded by Mr. Orme's counsel, including charts, photos, surveys, a videotape, and the autobiography of the then-owner of Jamaica Point Farm, the late Mr. Osbourne "Os" Owings, The Wizard is Os, privately published by its author in 1990.
First, the defendant challenges his convictions for aiding and abetting. It was admitted at trial that he was present and hunting at the Farm on January 20, 1993. It was also established to the satisfaction of the *710 Magistrate Judge, who did not clearly err in so finding, that Mr. Orme was de facto the manager of the hunting operations on the Jamaica Point Farm, vice its owner, Mr. Owings (originally charged here, but deceased before trial). Mr. Orme admitted placing corn out to feed waterfowl, though well before the 10-day period preceding the hunting date that amounts to baiting. There was a photograph taken by a federal game warden of corn-spreading activity on the Farm on January 17, 1993, three days before the hunt. The operator of the machinery could not be identified from the photograph, but there was evidence that corn was spread on the Farm only by Mr. Orme and Mr. Grafton (a co-defendant). Additionally, the evidence showed that Mr. Orme, though he hunted the Farm on January 20, was not to be found there when game wardens "raided" the operation, but was soon after found by a game warden meeting with another person who had been on the Farm on January 20, under odd circumstances. That is, the warden had followed a truck off the Farm, observed its driver make a phone call at a pay phone, and later observed its driver meeting with Mr. Orme at a restaurant, whereupon the man in the truck and Mr. Orme drove to a meeting place in Easton, behind some storage sheds. There, the warden confronted Mr. Orme, who acknowledged that he had been on the Farm, but said he had left early to go to a job site.
The defendant's principal argument against the seventeen findings of guilt on the aiding and abetting charges is that, in that there was no evidence that Mr. Orme placed any corn or other feed on January 17 (the operator of the baiting tractor being unidentified), but only that he did so well before the 10-day period when its placement could have constituted baiting, he could not have aided and abetted, as charged.
The difficulty with this argument is that, to sustain the convictions, the Government was not obliged to prove beyond a reasonable doubt that it was Mr. Orme who actually placed the corn on January 17. Rather, the Government needed only to prove that Mr. Orme aided and abetted others in the taking of waterfowl with the aid of bait or on or over a baited area, as defined in 50 C.F.R. § 20.21(i).
Although baiting is an offense as to which there is no scienter element to be proved, the Court is of the opinion that proof of aiding and abetting in such cases requires at least the degree of scienter that the Magistrate Judge implicitly found it to, in his discussion of the issue, by referring to cases such as Flowers v. Tandy Corp., 773 F.2d 585, 590 (4th Cir.1985). Those cases, as the Magistrate Judge properly noted, punish as aiders and abettors only those who "knowingly [associate themselves] with and [participate] in the criminal venture." (Emphasis added.)
Even so, there was sufficient evidence that Mr. Orme, from his participation in cornspreading in the past, from his managerial role in the hunting operation at the Farm, and from his exit and later rendezvous, knowingly assisted the 17 others present and hunting that day in their taking of migratory waterfowl over a baited area. (See the discussion below as to whether the Farm was a "baited area.") On this Court's review, the inferences drawn by the Magistrate Judge in support of his ultimate findings are not any less subject to deference than clear-cut determinations of fact, and, on the whole of the matter, the Magistrate Judge did not clearly err in deciding that Mr. Orme knowingly aided and abetted the taking of migratory waterfowl in violation of the MBTA and its regulations dealing with baiting.
The defendant next challenges the Magistrate Judge's conclusion that the areas in which the hunting activities on Jamaica Point Farm on January 20, 1993, were being conducted were baited areas. This is a question of fact, as the Fourth Circuit made clear in the case of United States v. Chandler, 753 F.2d 360, 363 (4th Cir.1985). In this case, there was conflicting testimony on whether the placement of feed at Jamaica Point Farm constituted baiting or made the hunting sites at issue baited areas. A number of witnesses on both sides, well-qualified to opine on the issue, gave the Magistrate Judge the benefit of their opinions. In the end, he chose to accept the conclusion that the hunting sites were baited areas. As the Supreme Court succinctly put it in Anderson, supra, 470 U.S. *711 at 574, 105 S.Ct. at 1512, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Appellant has certainly not demonstrated that the view that the areas were baited was an impermissible view of the evidence. Thus, he has not shown "clear error."
As his third point, the appellant raises an issue about corn that was found along the side of a public road running into the Farm, but rather near the locus of hunting activities. There was testimony that this corn could have been spilled from a truck that delivered corn to the Farm on January 18, 1994, but there was also testimony (from Agent Kuncir) that its placement was not necessarily consistent with a spill.
Appellant makes much of the fact that the road in question is a public road, and that it is unjust to hold a hunter to account criminally for conditions along a public road, even if it is, as the Magistrate Judge noted, of no concern how bait got to where it was found, in light of the absence of a scienter requirement in baiting cases.
The problem with appellant's argument is that there are public roads, and then again, there are public roads. Review of the photo and NOAA chart submitted with the appellant's brief shows that the road runs through and terminates on the Farm property. Much more to the point, Mr. Owings' autobiography, introduced as a trial exhibit by appellant, specifically discusses the road in question, in what is, in hindsight, rather ironically candid detail:
We made a left at Trappe on a gravel road. After four miles the gravel ended and a macadam road began. That was the Jamaica Point Farm. A mile ahead you could see the Manor House in a grove of trees. I was hesitant to enter, but we drove in. Will Marvel, the caretaker and tenant was standing in the yard.
* * * * * *
"Mr. Will" Marvel was a very substantial person. He owned three farms plus his home in Easton. He was on the Board of County Commissioners. It was he who got the Commissioners to surface the road from Trappe through to Jamaica Point. Because funds were not available to complete it in one year, he cannily insisted that they start at Jamaica Point and work back to Route 50. That way, he knew the job would be completed.
At the time I bought the property, I believed that that first stretch of paved road was private. I planted pine trees down both sides and at the entrance built a white fence with a sign that said "Jamaica Point FarmPrivate." [The fence and sign appear, as described, in a photo, at p. 37, captioned as having been taken in 1989.]
The Wizard is Os, 34-36.
Under the circumstances, it certainly does not offend ordinary principles of substantial justice to charge the appellant with responsibility for the corn simply because it was found along a "public road." At any rate, the evidence that the hunting areas were otherwise baited was sufficient to sustain all convictions in this case.
Finally, to the extent the appellant raises an issue about the sentence imposed, the Court finds, pursuant to 18 U.S.C. § 3742(e)(1) and (4), there being no sentencing guideline for the offense in question, that the sentence was not imposed in violation of law, nor was it plainly unreasonable, taking into account the defendant's involvement in the offense. Thus, it must be affirmed. 18 U.S.C. § 3742(f)(3). See United States v. Anderson, 787 F.Supp. 537, 538 (D.Md.1992).
For the stated reasons, an order will be entered separately, affirming the convictions from which this appeal has been taken.