568 So.2d 1379 (1990)
STATE of Louisiana
v.
Edward Saunders ALPAUGH, Jr.
No. KW 90 0035.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
Writ Denied January 4, 1991.
*1380 Office of Dist. Atty., St. Tammany Parish, Covington, for State appellee.
McNeil Kemmerly, Covington, for defendant-appellant.
Before COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
The defendant, Edward S. Alpaugh, Jr., was charged by affidavit[1] with hunting turkey over bait, in violation of La.R.S. 56:124(10)(a). This offense is a class two violation for purposes of sentencing. La. R.S. 56:124(10)(b); La.R.S. 56:32.[2] The defendant pled not guilty and, after a trial, was found guilty as charged. He was sentenced to pay a fine of $250 plus costs, or in default of payment serve 30 days in the parish jail, and serve 30 days in the parish jail, which 30 day jail sentence was suspended, and the defendant was placed on probation for one year with the special conditions that (1) he will perform 20 eight-hour public service work days, (2) his shotgun will be forfeited, and (3) he will forfeit his 1989 hunting rights. The trial court subsequently rescinded the forfeiture of the shotgun. The defendant sought a writ of review to this court. La.C.Cr.P. art. 912.1(C)(1). We granted the writ to consider, among other things, the serious constitutional issues raised in the writ application.

FACTS
On March 17, 1989, Brandon Cromp and Gary Thigpen, enforcement officers for the Louisiana Department of Wildlife and Fisheries, were on a general patrol looking for areas baited for turkeys on the 12,000 acre Money Hill Hunting Club located in the Bush-Walheim-Talisheek area of St. Tammany Parish, Louisiana. The turkey season in this area opened on March 18, 1989, the next day. During the patrol, Cromp and Thigpen found a one-fourth to one-half acre chufa field with a blind built on it. Chufa is a plant with a root type bud that deer, turkeys and squirrels will dig up and eat. Chufa may be legally planted at a hunting site. At a distance of between ten and twenty feet from the blind, Cromp and Thigpen found kernels of cracked and whole corn. Cromp testified the amount of corn was more than a pound but less than a bushel, and in his opinion there was enough corn to hold turkeys. Thigpen took several photographs of the area and the corn.
On March 19, 1989, at approximately 5:30 a.m., Cromp and Thigpen returned to the chufa field on the Money Hill Hunting Club property and staked out the blind and the baited area. At first light they heard someone calling turkeys from the blind. Cromp and Thigpen approached the blind and found Edward S. Alpaugh, Jr. therein. Alpaugh was dressed in camouflage and had a Model 12 16-gauge shotgun loaded with three shells and a turkey call in his possession. Alpaugh was advised of his Miranda rights and thereafter told Cromp and Thigpen that he did not know there was corn in the area. Alpaugh was issued a citation for hunting over bait and his gun was seized as evidence. Although there was less corn in the area on March 19, *1381 1989, than there was on March 17, 1989, there were still kernels of corn present. Thereafter, Cromp and Thigpen posted the area as a no hunting zone pursuant to La.R.S. 56:124(10)(a).
At the trial, Alpaugh testified in his own defense. He stated he went to the chufa field at first light on March 19, 1989. The chufa field had been "bulldozed" by his father three years before and the chufa planted two years before. After he started calling turkeys, two men approached his blind and identified themselves as game wardens. The game wardens told him his hunt was over because he was hunting over bait. His rights were read to him, his gun was taken, and he was given a ticket. Thigpen talked to him and he told Thigpen that he never saw any corn. Thigpen searched in the leaves about ten or fifteen feet from the back of the blind and found three small pieces of corn which he (Thigpen) showed to Alpaugh. Alpaugh testified he was not aware that there was corn present in the area prior to the time that the two game wardens showed it to him.

SUFFICIENCY OF THE EVIDENCE

(Assignments of error I, V, VI, and VII)
Alpaugh contends the trial court erred by finding him guilty because the State failed to prove beyond a reasonable doubt that (a) the field was baited when he hunted over it, (b) he knew or should have known the field was baited, and (c) the corn was not scattered around the field as a result of normal agricultural operations.
The standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. La.C.Cr.P. art. 821. A plea of not guilty places upon the State the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; La.C.Cr.P. art. 804(A)(1). Hunting turkeys over bait is proscribed in La.R.S. 56:124(10)(a), as follows:
No person shall:

. . . . .
(10)(a) Hunt, trap, or take turkey by the aid of baiting, or on or over any baited area. As used in this Subsection, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for fifteen days following complete removal of all such corn, wheat or other grain, salt, or other feed. Wildlife agents shall be authorized to close such baited area and to place a sign or signs in the immediate vicinity designating the closed zone and dates of closure. However, nothing in this Paragraph shall prohibit:
(i) The taking of turkey, on or over standing crops, grain crops properly shucked on the field where grown, or grains found scattered solely as the result of normal agriculture planting or harvesting; and
(ii) The taking of turkey, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed has been distributed or scattered as the result of bona fide agricultural operations or procedures, or as a result of manipulation of a crop or other feed on the land where grown for wildlife management purposes; provided, however, that manipulation for wildlife management purposes does not include the distributing or scattering of grain or other feed once it has been removed from or stored on the field where grown.

Proof That Area Was Baited
The affidavit upon which the prosecution was based charges that Alpaugh "did unlawfully *1382 Hunt Turkey over Bait." Thus, pursuant to La.R.S. 56:124(10)(a), Alpaugh was charged with hunting turkey "on or over any baited area."[3] A baited area for purposes of this case is defined in La.R.S. 56:124(10)(a) as "any area where shelled, shucked, or unshucked corn ... capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for fifteen days following complete removal of all such corn ...". (Emphasis added).
Cromp testified that on March 17, 1989, the day before the turkey season opened, he found kernels of cracked and whole corn at a distance of ten to twenty feet from the blind. Cromp stated that there was more than a pound but less than a bushel of corn, and that this was enough corn to hold turkeys. This evidence shows that the area near the blind was a baited area because this amount of corn was "capable of luring, attracting, or enticing" the turkeys and the corn was "placed, exposed, deposited, distributed, or scattered" in the area. Although there was significantly less corn present on March 19, 1989, than there was on March 17, 1989, the area was still a baited area under the law because an area is considered baited "for fifteen days following complete removal of all such corn".

Proof of Guilty Knowledge
Alpaugh contends the State failed to prove he "knew he was hunting over a baited area" and the "trial court erred in imposing criminal liability on a defendant despite the State's failure to show that defendant possessed any type of guilty mind."
This argument assumes that guilty knowledge is an essential element of the offense. Whether guilty knowledge is an essential element of this offense is a de novo issue in Louisiana. However, La.R.S. 56:124(10)(a), insofar as it pertains to hunting over bait or baiting, is almost identical to 50 C.F.R. § 20.21(i)[4] which was promulgated pursuant to the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq.[5] The majority *1383 rule in the United States Courts of Appeal is that hunting over bait is a "strict liability" crime for which scienter (guilty knowledge or intent) is not an essential element. United States v. Manning, 787 F.2d 431 (8th Cir.1986); United States v. Chandler, 753 F.2d 360 (4th Cir.1985); United States v. Catlett, 747 F.2d 1102 (6th Cir.1984), cert. denied, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). In this legal posture a hunter hunts over a baited field at his peril. United States v. Brandt, 717 F.2d 955 (6th Cir.1983). The United States Court of Appeal for the Fifth Circuit is unique in requiring "a minimum level of scienter as a necessary element for" the offense of hunting over bait. United States v. Sylvester, 848 F.2d 520 (5th Cir.1988). In the Fifth Circuit a "should have known" form of scienter is an essential element of the offense, and a hunter is required to make some effort to determine if the area on which he is hunting is baited. United States v. Delahoussaye, 573 F.2d 910 (5th Cir.1978). These particular assignments of error address the issue of the sufficiency of the evidence showing scienter (guilty knowledge). Thus, for purposes of these assignments of error we will assume arguendo that scienter is an essential element of the offense.
In his oral reasons for judgment, the trial judge observed, in pertinent part, as follows:
I will say that anybody who has a hunting license is obligated to know what they're hunting on. If it's necessary for them to come out the day before they hunt, come out the day before they hunt. Really, you have to be very careful about being invited. We all heard that.
This indicates that the trial judge applied the Fifth Circuit rule of "should have known" scienter in this case.
If guilty knowledge is an element of the offense charged herein, no further proof of this knowledge (or intent) is required than that the defendant voluntarily did the act. La.R.S. 15:444; La.R.S. 14:10(2). Although guilty knowledge is a question of fact, it need not be proven as a fact, but may be inferred from the circumstances. La.R.S. 15:445. When knowledge forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge. La.R.S. 15:446. When analyzing circumstantial evidence, La.R.S. 15:438 provides that the finder of fact must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. La.R.S. 15:438 does not establish a stricter standard of review than that of La.C.Cr.P. art. 821, but "provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So.2d 464, 470 (La.1983).
There is no direct evidence of record to show that the defendant knew or should have known of the corn in the area. Thus, it must be decided if the circumstantial evidence is sufficient to show he knew or should have known of it. When a case involves circumstantial evidence, and the finder of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The instant case is analogous to State v. Guirlando, 491 So.2d 38 (La.App. 1st Cir.1986). In Guirlando, the defendant was charged with possession of contraband at a State correctional institute in violation of La.R.S. 14:402 when one marijuana cigarette was found in a Bible in his footlocker. On appeal the defendant asserted the evidence was insufficient to show he knowingly had possession of the contraband. This court found the evidence was sufficient with the following rationale:
The defendant testified and denied knowledge of the presence of the marijuana in his Bible located in his footlocker. The jury viewed the defendant's appearance and demeanor when he testified. Their verdict indicates they found the defendant's testimony was not credible *1384 and, therefore, they gave it no weight and rejected it. This is a finding of fact over which this court has no jurisdiction.... The jurors could have reasonably inferred that the failure of the defendant to tell the truth supported the inference that the truth was unfavorable to him and also showed an awareness of wrongdoing. Further, as indicated in Captville, when the jury rejects the defendant's hypothesis of innocence presented by his testimony, the defendant is guilty unless there is another reasonable hypothesis which raises a reasonable doubt. It can reasonably be inferred from the fact of the presence of the marijuana in the defendant's Bible located in the defendant's footlocker and from the fact that he testified untruthfully that he had knowledge of the presence of the marijuana. Once it is factually established that the defendant was untruthful when he denied knowledge of the presence of the marijuana, the only remaining reasonable hypothesis is that he had knowledge of its presence. He either knew or he did not; there is no other hypothesis. The foregoing circumstances and the inferences reasonably drawn therefrom provide sufficient evidence to establish the elements of the offense beyond a reasonable doubt.
(Emphasis added; citations omitted)
Guirlando, 491 So.2d at 41-42.
The defendant herein testified in his own behalf and denied that he knew that corn was present in the area. The trial judge's judgment indicates he did not accept this testimony as credible and he rejected this hypothesis of innocence. There are only two possible hypotheses in this case; either the defendant knew (or should have known) about the corn, or he did not know about the corn. If we apply the precepts of Captville and Guirlando to the facts herein, once the hypothesis of no knowledge was reasonably rejected, then the only remaining hypothesis was knowledge.
In Captville, 448 So.2d at 680, n. 4, appears the following:
4. Such a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind", just as in the case of "flight" following an offense or the case of a material misrepresentation of facts by a defendant following an offense. See State v. Davenport, 445 So.2d 1190 (La.1984). "Lying" has been recognized as indicative of an awareness of wrongdoing. See State v. Rault, 445 So.2d 1203 (La. 1984), in which this court, in rejecting as unreasonable an asserted "hypothesis of innocence" (based on defendant's own statement), stated:
"The jury could have reasonably concluded that Rault concocted this version of the crime to hide his own guilt". 445 So.2d at 1213.
Any contrary implications in State v. Savoy, 418 So.2d 547 (La.1982), and State v. Shapiro, 431 So.2d 372 (La. 1983), simply mean that such evidence, although admissible to support a "guilty mind", are not alone sufficient to convict.
Further, the facts show the defendant knew the field was a place to hunt, the defendant was hunting in close proximity to the place where the corn was found, there was significant corn present at the hunting site the day before the season opened and the corn had not been planted in the field but had been brought to the field and scattered about. The circumstantial evidence is sufficient to support the conviction.
Thus, we specifically hold that Alpaugh's assignments of error concerning the sufficiency of the evidence of guilty knowledge are without merit because there is sufficient evidence to show guilty knowledge. We specifically do not rule on the issue of whether scienter (guilty knowledge) is an essential element of the offense herein because it is unnecessary to do so.

Failure to Negate Bona Fide Agricultural Activities
The defendant asserts the State failed to prove that "the corn was not naturally there, or was not there as a result of bona *1385 fide agricultural activities", citing La.R.S. 56:124(10)(a)(i) and (ii).
The baited area was found on the land of the Money Hill Hunting Club; it was not located on land designated as a farm or dairy. The field where the corn was found was a chufa field; it was not a corn field. The chufa was planted to legally provide food for deer, turkeys and squirrels, and, thus, attract them to the field for hunting purposes. The photographs of the chufa field do not show corn stalks. Thus, it can be reasoned that corn was not planted in this field, and the whole and cracked corn found in the area was brought there and scattered about. The corn found in the area was not planted in the ground, but was scattered on the surface of the area. La.R.S. 56:124(10)(a)(ii) provides that "manipulation for wildlife management purposes does not include the distributing or scattering of grain ... once it has been removed from or stored on the field where grown." (Emphasis added). From all of the above evidence, it can reasonably be inferred that the whole and cracked kernels of corn were brought to the area and scattered about for hunting, and not agricultural purposes. This evidence is sufficient to negate bona fide agricultural activities.[6]

Conclusion
These assignments of error are without merit.

ADVERSE INFERENCE FOR FAILURE TO CALL WITNESS

(Assignment of error III)
The defendant asserts that the "trial court erred in failing to infer from the failure of the State to call ... Agent Gary Thigpen ... that Thigpen's testimony would have been adverse to the State's case; thus raising a reasonable doubt concerning defendant's guilt."
The only witness for the State at the trial was Cromp. Thigpen did not testify. In his closing argument, counsel for the defendant noted that "scrutiny of the record would indicate that Agent Thigpen was also a subpoenaed witness who did not appear and was not called by the State" and then stated that "I think that there may be some inferences that should be taken from his failure to appear here." A review of the trial judge's reasons for judgment does not reflect whether the trial judge inferred anything from the failure of Thigpen to testify or not. The record before us does not contain a subpoena for Thigpen.
The law on this circumstantial evidence issue is set forth in Harrigan v. Freeman, 498 So.2d 58, 61-62 (La.App. 1st Cir.1986), as follows:
The failure of a party to call a witness, who possesses knowledge of facts pertinent to the case and whose absence is not satisfactorily explained, results in an inference that the witness's testimony would be adverse.... However, this rule must be tempered by the proposition that a party to a lawsuit needs only to prove his case. If he does so by calling one or more witnesses to testify concerning an issue, he should not be penalized because he fails to call still another witness on the subject. ... And once a plaintiff has made out a prima facie case, the opposing party should not be allowed to take no action to produce a witness to a transaction and use that witness's absence as mute refutation of the testimony of the witness who did testify.... Clearly, having made a prima facie showing, through her own testimony corroborated by documentary evidence, plaintiff's failure to call a second witness should not raise any adverse inference.
(Citations omitted)
Further, the adverse inference will not arise when the witness is available to either side. Fidelity Bank & Trust Company v. Deutsch, Kerrigan & Stiles, 557 So.2d 991 (La.App. 4th Cir.1990); Llorence v. Natchitoches Parish School Board, 529 So.2d 479 (La.App. 3rd Cir.), writ denied, 532 So.2d 176 (La.1988); Scott v. Terrebonne Lumber *1386 Company, 479 So.2d 410 (La.App. 1st Cir.1985), writ denied, 485 So.2d 61 (La. 1986). Finally, even if the adverse inference attaches, it will not outweigh sworn testimony accepted as credible by the trier of fact. Delafosse v. Industrial Painters, Inc., 199 So.2d 559 (La.App. 3rd Cir. 1967); Pierre v. Galloway, 96 So.2d 916 (La.App. 1st Cir.1957).
The State presented a prima facie case with the testimony of Cromp, and this case was corroborated by the photographs filed in evidence. Thigpen was available for subpoena by the State or by Alpaugh. The trial judge's reasons for judgment and judgment indicate that he accepted Cromp's testimony as credible. The adverse inference is not applicable in this case.
This assignment of error is without merit.

ENTRAPMENT

(Assignment of error II)
The defendant contends the trial "court erred in failing to find that the State entrapped defendant by failing to post signs closing the field for hunting, when it knew, prior to the time defendant was present on the premises, that the area was `baited'."
The law on entrapment as an affirmative defense is set forth in State v. Brand, 520 So.2d 114, 117 (La.1988), as follows:
Entrapment is a defense which arises when a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so.... The defense is designed to deter the police from implanting criminal ideas in innocent minds and thereby promoting crimes which would not otherwise have been committed. ... Obviously, law enforcement agents should not persuade citizens to commit crimes, and the defense is recognized to prevent shocking police inducement of the perpetration of a crime.
Entrapment is an affirmative defense.5... Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury. ...
The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed.... In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.... Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent.
5. An affirmative defense is one which, rather than negating an essential element of the crime, presents exculpatory circumstances that defeat culpability in spite of the fact that the prosecutor has proved all of the essential elements beyond a reasonable doubt.... Thus, the defense of intoxication (La.R.S. 14:15) which negates the mental element of an offense is not an affirmative defense, while the defense of justification (La.R.S. 14:18) which presents exculpatory circumstances bearing on culpability is an affirmative defense.
(Citations omitted)
The facts show that on March 17, 1989, Cromp and Thigpen observed the corn in the area of the blind on the chufa field. They did not post the field for no hunting at that time. Prior to first light on March 19, 1989, Cromp and Thigpen staked out the blind to see who hunted in it. Subsequently, Alpaugh was caught hunting in the blind. Prior to this time, Cromp and Thigpen had no contact with Alpaugh. The area was posted as a no hunting area thereafter.
*1387 The following observations by the trial court judge in his reasons for judgment are pertinent to this issue:
You can't expect this Court or any Court to believe that these Wildlife agents who are hired to, sworn in and work to protect the wildlife in the State, to post fields that they find have been intentionally baited by somebody. To do that would mean that they would never catch anybody, and, certainly, that's not what they are hired for. They are hired to prohibit baiting. And I daresay if they were given guidelines such as you suggest, that is, that whenever they find a baited field to close it off, put signs around it, then they'd never catch the baiter and that's not what they're hired for.
The instant case is very similar to McDowell v. United States, 383 F.2d 599 (8th Cir.1967) on the issue of entrapment. In McDowell federal game agents received a complaint of baiting on McDowell's property. They proceeded to stake out McDowell's fields. They observed unusual activity in McDowell's fields at night and, on investigation, they found shelled corn scattered in a millet field. The agents observed hunting in the fields on one occasion, and later, after a second hunt commenced, they entered the fields and took action. The court rejected the defendants' claim of entrapment with the following rationale:
Appellants next contend that the trial court erred in denying appellants' motions for judgments of acquittal on the grounds of entrapment of appellants by the United States government agents. This contention is without foundation in the record before us.
Unlawful entrapment has been defined as the "solicitation of an otherwise innocent person to commit a crime solely for the purpose of prosecution." ... It occurs only when the criminal conduct was the result of "creative activity" on the part of law-enforcement officers. ... The record here is absolutely void of any evidence that the federal game agents solicited, inspired, incited, persuaded, or otherwise prompted the appellants to bait the fields in question or hunt over the baited fields. On the contrary, the agents maintained a completely passive role merely observing the fields in question, and at no time did "creative activity" on their part contribute to the violation of which appellants were convicted. Therefore, the trial court properly denied appellants' motions for judgments of acquittal. There was no evidence to justify the defense of entrapment.
(Emphasis added; citations omitted)
We find this rationale is applicable herein.
This assignment of error is without merit.

CONSTITUTIONALITY OF LA.R.S. 56:124(10)(a)

(Assignment of error IV)
In this writ of review,[7] the defendant asserts the following assignment of error:
In the alternative, if knowledge is not an element required to be proven for a successful prosecution under La.R.S. 56:124(10)(a); then the statute is unconstitutionally vague in that it fails to inform a person of normal intellect that he is obliged to conduct a search of an "area" prior to hunting to determine whether the area is baited; and it fails to inform a person of normal intellect how wide an area to examine prior to hunting.
In our discussion of the assignments of error pertaining to the sufficiency of the evidence, we observed that the trial court judge applied the Fifth Circuit rule of "should have known" scienter in this case and specifically held that there was sufficient evidence to show guilty knowledge by the defendant. We declined to rule on *1388 whether scienter was an essential element of the offense. In this posture, since the defendant asserts this error in the alternative, it is unnecessary to address it. A court should not pass on the constitutionality of a statute unless it is essential to the decision of the case. Diaz v. Allstate Insurance Company, 433 So.2d 699 (La. 1983); Rayborn v. Livingston Parish Police Jury, 479 So.2d 401 (La.App. 1st Cir. 1985). We treated the assignments of error on the sufficiency of evidence as we did, in part, to comply with this policy mandate.[8]

EXCESSIVENESS OF SENTENCE

(Assignments of error VIII and IX)
The defendant asserts his "sentence is excessive considering all of the circumstances". He further asserts the special condition that he perform 20 eight-hour days of community service is error because "the State failed to prove that defendant possesses any guilty mind requiring rehabilitation" and that "such service is not rationally related to any rehabilitation of the defendant."
Pursuant to La.R.S. 56:32(1), the maximum sentence which could have been imposed herein was a fine of $350 and imprisonment for 60 days. The sentence actually imposed a fine of $250 and 30 days in jail, and the 30 days was suspended. Pursuant to La.C.Cr.P. art. 884, the defendant was sentenced to serve 30 days in jail in default of paying his fine and costs. He was placed on probation for one year with two special conditions. La.C.Cr.P. arts. 894 and 895. The sentence actually imposed is significantly less than the maximum authorized and does not constitute an abuse of the trial court's sentencing discretion.
Because the evidence is sufficient to show the defendant had guilty knowledge, the errors assigned pertaining to the community service special condition of probation are without merit.
These assignments of error are without merit.

DECREE
For the foregoing reasons, the writ of review previously issued herein is recalled, and the supervisory relief requested by the defendant is denied.
WRIT OF REVIEW RECALLED AND SUPERVISORY RELIEF DENIED.
NOTES
[1] La.R.S. 56:9(E)(3). Compare La.C.Cr.P. art. 382(A).
[2] La.R.S. 56:32 provides as follows:

§ 32. Class two violation
The following penalties shall be imposed for a class two violation:
(1) For the first offense, the fine shall be not less than one hundred dollars nor more than three hundred fifty dollars, or imprisonment for not more than sixty days, or both;
(2) For the second offense, the fine shall be not less than three hundred dollars, nor more than five hundred fifty dollars, and imprisonment for not less than thirty days nor more than sixty days;
(3) For the third offense and all subsequent offenses, the fine shall be not less than five hundred dollars nor more than seven hundred fifty dollars, and imprisonment for not less than sixty days nor more than ninety days, and forfeiture to the commission of anything seized in connection with the violation.
[3] Alpaugh was not charged with hunting turkey "by the aid of baiting".
[4] 50 C.F.R. § 20.21(i) provides as follows:

Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory game birds:
(i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed. However, nothing in this paragraph shall prohibit:
(i)(1) The taking of all migratory game birds, including waterfowl, on or over standing crops, flooded standing crops (including aquatics), flooded harvested croplands, grain crops properly shocked on the field where grown, or grains found scattered solely as the result of normal agricultural planting or harvesting; and
(i)(2) The taking of all migratory game birds, except waterfowl, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed has been distributed or scattered as the result of bona fide agricultural operations or procedures, or as a result of manipulation of a crop or other feed on the land where grown for wildlife management purposes: Provided, That manipulation for wildlife management purposes does not include the distributing or scattering of grain or other feed once it has been removed from or stored on the field where grown;
[5] 16 U.S.C. 704 provides as follows:

Subject to the provisions and in order to carry out the purposes of the conventions, referred to in section 703 of this title, the Secretary of the Interior is authorized and directed, from time to time, having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the conventions to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulations shall become effective when approved by the President.
[6] In the Sylvester case the government presented expert testimony that the seeding of the grain was inconsistent with bona fide agricultural purposes.
[7] The issue of the constitutionality of the statute under which the defendant is charged was not raised in the trial court, but was raised for the first time in the writ application to this court. See Official Revision Comment (b)(1) for La.C. Cr.P. art. 535; Official Revision Comment (b)(2) for La.C.Cr.P. art. 859; City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974); State v. Jackson, 460 So.2d 1183 (La.App. 2nd Cir.1984).
[8] It would appear the errors urged by the defendant in this assignment of error were disposed of adversely to him in the Manning, Chandler, Catlett and Brandt cases. For authorities pertaining to the validity of strict liability (no scienter) offenses in Louisiana see La.R.S. 14:8(2); State v. Humphrey, 412 So.2d 507 (La.1981); State v. Terrell, 352 So.2d 220 (La.1977); J. Baker, Public Law, Work of Appellate Courts 1977-1978, 39 La.L.Rev. 771-792 (1979).