668 So.2d 1324 (1996)
STATE of Louisiana
v.
Edwin WINGATE.
No. 95 KW 1874.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
*1325 Ronald J. Landry, LaPlace, for Defendant-Appellant Edwin Wingate.
William R. Campbell, Jr., St. Tammany/Washington Parish, District Attorney's Offices, New Orleans, for Plaintiff-Appellee State of Louisiana.
Before SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.
Relator, Edwin Wingate, was charged by bill of information with one count of possession of undersized catfish, in violation of La.R.S. 56:326 A(7)(b), and one count of failure to maintain records, in violation of La. R.S. 56:306.4 A.[1] Relator pled not guilty and, after a bench trial on July 11, 1995, was *1326 found guilty as charged. For the possession of undersized catfish conviction, he was sentenced to 60 days in the parish jail and was fined $400, or 30 days in the parish jail in default of payment of the fine. For the failure to maintain records conviction, he was fined $300, or 60 days in the parish jail in default of payment of the fine, with this sentence to be served consecutively to the illegal possession sentence.[2] Relator filed a writ application with this court seeking review of his misdemeanor convictions and sentences. We granted certiorari, ordered the parties to file briefs, and placed this matter on the docket. Relator alleges five assignments of error, as follows:
1. The trial court erred in denying the motion to quash.
2. The trial court erred in finding relator guilty of failure to maintain records.
3. The trial court erred in finding relator guilty of possession of undersized catfish.
4. The trial court erred in denying the motion to reconsider sentence.
5. The trial court erred in imposing an excessive sentence.

FACTS:
On December 4, 1994, relator's tractor-trailer was stopped by Wildlife and Fisheries agents on I-10 in St. Tammany Parish just before the Mississippi state line. A search of the truck, which contained a large shipment of frozen catfish, revealed that a very high proportion of the shipment consisted of undersized channel catfish. Relator, a truck driver for Bennett Seafood, which is located in Bainbridge, Georgia, was arrested and cited for the above violations.
At the trial, Wildlife and Fisheries Agent Edward L. Adams testified that on December 2, 1994, he received an anonymous call that a truck from Bennett Seafood was in Des Allemands, Louisiana, picking up undersized catfish. After conducting surveillance on the truck for approximately two days and following it to various locations, the Wildlife and Fisheries Agents stopped it on I-10 in St. Tammany Parish and discovered a high proportion of undersized channel catfish. Agent Adams testified there was a total of 32,083 "collarboned" (head-removed) catfish in the shipment. One load of catfish came from B & C Seafoods, Inc., in Vacherie, Louisiana. This shipment contained 6,613 channel catfish and 357 blue catfish. Of the channel catfish, 4,213 were legal and 2,400 were undersized. Agent Adams stated approximately 36.3 percent of this shipment of channel catfish from B & C Seafoods, Inc., was undersized.
Agent Adams also testified regarding the shipment of catfish from Cajun Catfish in Des Allemands, Louisiana. This shipment consisted of 25,480 channel catfish and 10 blue catfish. Of the channel catfish, 6,510 were legal and 18,970 were undersized. Agent Adams testified that 74.45 percent of these channel catfish were undersized. Although relator produced some papers in his truck which included a wholesale/retail dealers license, receipts from Cajun Catfish and B & C Seafoods, Inc., and check stubs, he did not produce all of the records required by La.R.S. 56:306.4 A. Specifically, the receipts did not include the species of fish and the license number of the commercial fisherman or wholesale/retail dealer from whom he had purchased the seafood.
Wildlife and Fisheries biologist Howard Rogillio was accepted by the trial court as an expert in the identification of fish. Rogillio explained the method used to distinguish a channel catfish from a blue catfish and the *1327 proper way to measure a collarboned channel catfish. He also testified regarding the actual counting, identification, and measurement of the fish seized from relator's truck.
Relator stated that on December 4, 1994, he was employed by Bennett Seafood. He furnished a tractor-truck, and Bennett Seafood provided the trailer. He explained Bennett Seafood placed orders for the catfish, and he only picked them up, wrote a check for the purchase, and transported the fish back to Bennett Seafood. He testified he did not open the boxes, and he did not know what size fish were in the boxes. When asked if he knew he was supposed to keep license numbers from the persons from whom he purchased fish, relator responded that he was a truck driver, he worked out of Georgia, and he was not familiar with Louisiana rules and regulations.

ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, relator contends the trial court erred in denying the motion to quash. Relator's motion to quash alleged La.R.S. 56:326 A(7)(b) is unconstitutionally vague and overbroad and a denial of equal protection. At a hearing on the motion to quash held immediately before trial, after entertaining arguments by the prosecutor and defense counsel, the trial court denied the motion to quash.
Relator argues this statute is unconstitutionally vague and overbroad because a person who initially possesses a legal shipment containing ten percent undersized fish (See La.R.S. 56:326 B(3)) can suddenly become a violator when he sells a portion of the legal-sized fish, thereby increasing his percentage of undersized fish. Relator extends this hypothetical argument all the way from a wholesale dealer to a restaurant owner. While this argument is interesting, it is a far cry from what occurred in the instant case and, therefore, he cannot argue that La.R.S. 56:326 A(7)(b) is unconstitutionally vague and overbroad on the ground that it may be applied unconstitutionally to others, in other situations not before this Court. See State v. Greco, 583 So.2d 825, 828-829 (La.1991).
Relator also contends that this statute proscribing the possession of undersized catfish is an unconstitutional denial of equal protection of the laws because seafood dealers who possess undersized crabs are treated differently than those who possess undersized catfish, and because the channel catfish is the only freshwater or saltwater finfish with a measurement for the collarbone-off size limit.
Obviously, differences among the various species of fish and wildlife mandate different rules and regulations in order to protect, conserve, and efficiently manage each species. The state's regulatory laws limit and control the exploitation of wildlife by requiring licenses to take game and fish, providing for the fixing of seasons and limits, regulating methods of taking, providing for the licensing of commercial fishing vessels, etc. See State v. McHugh, 92-1852 (La. 1/6/94), 630 So.2d 1259, 1265. Contrary to relator's argument, the fact that channel catfish can be measured either by total length (minimum length eleven inches with the mouth closed) or by a length with the collarbone off (minimum length nine inches), does not deny to anyone engaged in the commercial catfish business the equal protection of the laws. Obviously, the fact that a channel catfish can be measured not only by its total length, but also after having been cleaned (collarboned, i.e., head removed), only facilitates the commercial seafood business by providing a way to check for minimum length requirements after these fish have been processed.
Finally, we are unpersuaded by relator's argument regarding the alleged unequal treatment of wholesale/retail crab dealers who possess undersized crabs and wholesale/retail catfish dealers who possess undersized catfish. Relator notes that, pursuant to La.R.S. 56:326 F(1), a wholesale/retail dealer who possesses undersized crabs can avoid criminal penalties if he can provide to Wildlife and Fisheries agents the identity of the commercial fisherman from whom he purchased such undersized crabs, whereas no similar provision exists for the wholesale/retail dealer who possesses undersized catfish.
*1328 We conclude that the legislature has identified specific, different enforcement problems in the harvesting, possession, and sale of undersized crabs than in the taking, possession, or sale of undersized catfish. For instance, any person who takes or possesses undersized commercial catfish is subject to the penalties for a Class 3 violation. However, while a wholesale/retail dealer who possesses undersized crabs will be subject to these same penalties for a Class 3 violation, a commercial fisherman identified as having sold undersized crabs to a wholesale or retail dealer is subject only to the penalties for a Class 1 violation. See La.R.S. 56:326 F(3 & 4) & G. Accordingly, we find no denial of equal protection due to the different treatment of violations for possession of undersized crabs and violations for possession of undersized catfish.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, relator contends that the trial court erred in finding him guilty of failure to maintain records. Specifically, relator asserts he was only a truck driver employee of Bennett Seafood, the owner of the wholesale/retail dealer's license, and that the record-keeping requirements of La.R.S. 56:306.4 A should apply only to the licensed wholesale/retail dealer (Bennett Seafood) and not to its employee truck driver (relator). We disagree.
In order to transport fish, relator was required to possess at least one of the following: (1) a commercial fisherman's license; (2) a wholesale/retail dealer's license; or (3) a transport license. See La.R.S. 56:307 A. Since these fish were processed fish within the definition of La.R.S. 56:8(77), a transport license was not sufficient. See La.R.S. 56:307 C. Furthermore, because relator purchased the fish for resale outside Louisiana, a commercial fisherman's license was insufficient; he was required to have a wholesale/retail dealer's license. See La.R.S. 56:303.4 A. Finally, because relator was an employee of Bennett Seafood which was buying, acquiring, handling, or selling fish "at any place other than on the premises of the place of business," he was required to obtain a wholesale/retail dealer's license. See La. R.S. 56:306 B(4). Therefore, we conclude relator was required to know, and comply with, the provisions regarding the records to be maintained by wholesale/retail dealers, as provided in La.R.S. 56:306.4 A.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, relator contends that the trial court erred in finding him guilty of possession of undersized catfish. Specifically, he urges there was no showing of knowledge or scienter. Relator states he "did not know what size catfish he picked up and was transporting and had no way of knowing except to rip open each sealed box" and defrost the fish therein. He requests this Court to "read into the law scienter or knowledge." We decline to do so.
La.R.S. 56:326 A provides, in pertinent part:
The following are the legal size limits on commercial fish. No person shall take or possess these fish under or over the prescribed sizes for commercial purposes.
La.R.S. 14:8 provides:
Criminal conduct consists of:
(1) An act or a failure to act that produces criminal consequences, and which is combined with criminal intent; or
(2) A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent; or
(3) Criminal negligence that produces criminal consequences.
La.R.S. 15:444 provides:
If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act; and any evidence that he did not know such act to be forbidden by law is inadmissible.
It is well established that some crimes have no intent element. See State v. Humphrey, *1329 412 So.2d 507, 512 n. 3 (La.1981). We note the Legislature could have placed an intent requirement into La.R.S. 56:326 A, but it did not do so. We believe there is an important reason why. To judicially read into this statute the requirement of scienter or guilty knowledge as urged by relator would further hamper the already strained enforcement efforts of Wildlife and Fisheries agents. See and compare State v. McHugh, 630 So.2d at 1267. An intent requirement might not significantly reduce the apprehension and prosecution of commercial fishermen who take and/or possess undersized fish, but it would make the prosecution of wholesale and retail dealers virtually impossible. A dealer could simply claim to have no knowledge of the number, size, or species of fish which had been cleaned, frozen or packaged, which would be almost an absolute defense. While we are not unsympathetic to relator's argument that an unknowing and otherwise innocent person might be convicted of a violation of this statute simply by doing his job as a truck driver, we note that all persons (hunters, recreational fishermen, commercial fishermen, seafood dealers, etc.) must familiarize themselves with all applicable Wildlife and Fisheries laws or risk prosecution for violations thereof. In order to comply with La.R.S. 56:326 A, it may be prudent for wholesale/retail dealers to conduct business only with reputable commercial fishermen and/or reputable seafood dealers and, in certain instances, inspection and/or random sampling of seafood shipments might be the best policy to insure compliance with this statute.[3] Nevertheless, because La.R.S. 56:326 A contains no intent requirement, and this court will not read into the statute a requirement of scienter or guilty knowledge,[4] the trial court did not err in finding relator guilty of possession of undersized catfish.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, relator maintains the trial court erred in denying the motion to reconsider sentence. Relator's motion to reconsider sentence contained three grounds. First, the trial court failed to give him credit for time served. Second, the total of the fines imposed ($700) and the forfeiture of all fish seized (even legal fish) exceeded the $1,000 limit for non-jury trials provided in La.C.Cr.P. art. 779. Finally, the sixty-day jail sentence was excessive and would cause relator to lose his job. The trial court denied the motion to reconsider sentence without a hearing.
Initially, we note relator was entitled to credit for time served and we order the trial court, upon resentencing, to give him such credit. We consider relator's argument regarding the excessiveness of his sixty-day jail sentence in our treatment of assignment of error number five.
Concerning relator's argument that the total of the fines imposed and the forfeiture of all the fish seized exceeded the $1,000 limit for non-jury trials, we note he does not specifically argue reversible error for the denial of the right to a jury trial or for the lack of a jury trial waiver. Instead, he raised this issue as a part of his motion to reconsider sentence. In any event, for the following reasons, we reject relator's argument that the forfeiture of fish should be *1330 included with the total of the fines imposed to exceed the $1,000 non-jury trial limit.
Forfeiture of the fish seized in this case is not a sentencing function of the trial court. The trial court may impose a fine, imprisonment, or both, for a first offense Class 3 violation. See La.R.S. 56:33. While forfeiture of the fish in this case is authorized by La.R.S. 56:39, the things seized are forfeited to the Department of Wildlife and Fisheries in accordance with La.R.S. 56:58 and La.R.S. 56:60. These provisions clearly establish that forfeiture of the fish seized in connection with the Wildlife and Fisheries violation is an administrative, rather than a judicial, function.
Additionally, we reject relator's implied assertion that the fish in this case have been forfeited. Although the minutes incorrectly indicate the trial court ordered the fish to be destroyed on motion of the assistant district attorney, in fact, an examination of the transcript reveals that the trial court withheld a pronouncement on the forfeiture pending the outcome of the instant writ application.

ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, relator contends the trial court erred in imposing an excessive sentence. Specifically, he asserts that 60 days in jail is excessive for "a minor record keeping violation." However, as noted above in footnote 2, the 60-day jail sentence was imposed (along with the $400 fine) for the possession of undersized catfish conviction. This offense is a Class 3 violation. See La.R.S. 56:326 A(7)(b), B(3), & G. A first offense Class 3 violation is punishable by a fine of not less than $250 nor more than $500, or imprisonment for not more than 90 days, or both. See La.R.S. 56:33(1). Therefore, this sentence of 60 days is within the statutory range for this offense. Nevertheless, for the following reasons, we vacate this sentence and remand this case for resentencing.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
The factors guiding the decision of the trial court are necessary for an appellate court to adequately review a sentence for excessiveness and, therefore, should be in the record. Otherwise, a sentence may appear to be arbitrary or excessive and not individualized to the particular defendant. State v. Green, 558 So.2d 1263, 1268 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La.1990). When the reasons for an apparently severe sentence in relation to the particular defendant and the actual offense committed do not appear in the record, a sentence may be vacated and remanded for resentencing. State v. Green, 558 So.2d at 1268.
In the instant case, while the amount of undersized catfish possessed by relator was substantial, the trial court did not state that it had considered his criminal record, personal history, employment, education, age, etc. In our view, the trial court did not state sufficient reasons to explain or justify the imposition of a 60-day sentence, in addition to the $400 fine, for this particular offender and this offense. Nevertheless, we do not specifically find this sentence to be excessive. There may be good reasons for imposing this sentence in this case. If Relator has a criminal record the offense might warrant a jail term. By remanding the case for resentencing, we are simply giving the trial court an opportunity to either reduce the sentence or state sufficient reasons to justify the imposition of this sentence. Accordingly, the instant sentence is vacated and the case is remanded to the trial court for resentencing. If relator is a first offender, the trial court should give strong consideration to a suspended sentence and probation, including in such probation a special condition of no more than 30 days in the parish jail. The trial court also shall give relator credit for *1331 time served. See La.C.Cr.P. art. 880; State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990).
Concerning the sentence imposed for Count 2 (the failure to maintain records conviction), we find that a fine of $300 is not excessive under the circumstances presented herein. As no jail term was imposed in connection with this conviction, credit for time served is not an issue in this sentence.
CONVICTIONS AFFIRMED. SENTENCE (FINE) FOR FAILURE TO MAINTAIN RECORDS CONVICTION AFFIRMED. ENTIRE SENTENCE FOR POSSESSION OF UNDERSIZED CATFISH VACATED AND REMANDED FOR RESENTENCING IN ACCORDANCE WITH THE VIEWS EXPRESSED HEREIN.
NOTES
[1] The bill of information incorporates the complaint/affidavit issued to relator by Wildlife and Fisheries Agent David Folse.
[2] Both the State's brief and relator's brief refer to the 60-day sentence as the sentence for the failure to maintain records conviction. Perhaps they do so because the minutes incorrectly indicate that the sentence of 60 days in the parish jail was imposed in connection with Count 2 (the failure to maintain records charge). However, the transcript clearly indicates that the 60-day sentence was imposed for the possession of undersized catfish conviction. The minutes also incorrectly indicate relator was assessed court costs. Where there is a discrepancy between the transcript and the minutes, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983).
[3] We note La.R.S. 56:326 B provides some leeway to commercial fishermen and seafood dealers by providing that, as to all commercial fish, five percent of the total number of each species in possession may be smaller than the legal limit. We further note as to channel catfish, ten percent may be smaller than the legal limit. See La.R.S. 56:326 B(3).
[4] State v. Alpaugh, 568 So.2d 1379 (La.App. 1st Cir.1990), writ denied, 572 So.2d 65 (La.1991), presented this court with an issue of whether scienter was an essential element of the offense of turkey hunting over bait, or whether this was a strict liability crime. However, because the circumstantial evidence was sufficient to prove, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, that Alpaugh knew (or should have known) about the bait, this court did not rule on that issue. Herein, unlike the situation presented in Alpaugh, this court must decide the issue of whether or not scienter is an essential element of the offense of possession of undersized catfish because, if it is an essential element, then there is insufficient circumstantial evidence to support this conviction.